

FILED
COPY
13 MAY 10 PM 1:45
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:_____

1  FRED D. HEATHER - State Bar No. 110650
   fheather@glaserweil.com
2  AMIN AL-SARRAF - State Bar No. 265116
   aalsarraf@glaserweil.com
3  GLASER WEIL FINK JACOBS
      HOWARD AVCHEN & SHAPIRO LLP
4  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
5  Telephone:  (310) 553-3000
   Facsimile:  (310) 556-2920
6
   Attorneys for Plaintiffs
7  OpenGate Capital Group LLC,
   RoundRock 092012 LLC,
8  RoundRock Scientific International LLC and
   RoundRock Mexico LLC
9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12  OPENGATE CAPITAL GROUP LLC, a        CASE NO. **CV13-03368 - ABC (AGRx)**
    Delaware limited liability company,
13  ROUNDROCK 092012 LLC, a Delaware
    limited liability company, ROUNDROCK
14  SCIENTIFIC INTERNATIONAL LLC, a      **COMPLAINT FOR:**
    Delaware limited liability company,  **(1) VIOLATION OF**
15  ROUNDROCK MEXICO LLC, a              **SECTION 10(b) AND RULE 10b-5**
    Delaware limited liability company,  **OF THE SECURITIES EXCHANGE**
16                                       **ACT OF 1934;**
                  Plaintiffs,            **(2) FRAUDULENT**
17                                       **MISREPRESENTATION;**
    v.                                   **(3) NEGLIGENT**
18                                       **MISREPRESENTATION;**
    THERMO FISHER SCIENTIFIC, INC., a    **(4) BREACH OF CONTRACT;**
19  Delaware corporation, and Does 1-50, **(5) VIOLATION OF SECTION**
                                         **9(A)(4) OF THE SECURITIES**
20                Defendants.            **EXCHANGE ACT OF 1934;**
                                         **(6) BREACH OF THE IMPLIED**
21                                       **COVENANT OF GOOD FAITH**
                                         **AND FAIR DEALING**
22

23

24

25

26

27

28

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

Plaintiffs OpenGate Capital Group LLC, RoundRock 092012 LLC, RoundRock Scientific International LLC, and RoundRock Mexico LLC (collectively, "RoundRock" or "Plaintiffs"), by their attorneys Fred Heather and Amin Al-Sarraf of the law firm Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP, for their complaint against defendant Thermo Fisher Scientific, Inc. ("Thermo Fisher" or "Defendant") and Does 1-50 (the "Doe Defendants") (collectively "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.  Thermo Fisher acted in bad faith to induce Plaintiffs to purchase its Lab Workstation Business in October 2012, by, among other things, fraudulently concealing critical information related to the safety, security, viability and operation of the business, including the fact that its primary manufacturing facility has been overrun by a reputably violent and hostile Mexican drug cartel.

2.  Thermo Fisher (NYSE: TMO), a publicly-traded company with annual revenues in excess of $12 billion, prides itself on enabling others to make the world "healthier, cleaner and safer." Notwithstanding this lofty epithet, Thermo Fisher has, in fact, acted over the course of many years, in conscious disregard of the health and safety of its employees and others in its oversight of a significant division of its business.

3.  As of 2012, Thermo Fisher carried on its books a neglected, or "orphaned," division of its multi-billion dollar healthcare equipment business, called the Lab Workstation Business. The Lab Workstation Business manufactures laboratory furniture in facilities in, among other places, Arkansas and Mexico. The facility in Reynosa, Mexico (the "Reynosa Facility") is the largest, most profitable facility for the Lab Workstation Business. The Reynosa Facility employs a workforce of approximately 1,000, and generates approximately 40-50% of the revenue of the Business.

4.  During all times under Thermo Fisher's control, the Lab Workstation

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

Business was run by a group of companies including Hamilton Fisher L.L.C., FHML S. de R.L. de C.V., Fisher Hamilton S. de R.L. de C.V, Collegedale, LLC, Advanced Lab Concepts, Inc., Advanced Lab Concepts of Austin, LLC and Epoxyn Products, L.L.C. (collectively, the "Hamilton Entities" or the "Securities").

5.    Compelled to immediately divest itself from the Lab Workstation Business for financial and accounting purposes, Thermo Fisher enlisted the investment bank, Barclays, to conduct a public auction to sell the Lab Workstation Business.  Thermo Fisher instructed Barclays to sell the Hamilton Entities as fast as possible, and, eventually, regardless of purchase price.

6.    The Thermo Fisher/ Barclays' auction caught RoundRock's attention. Attracted by, among other things, the appeal and potential of the division, which boasted approximately $180 million in annual revenues, RoundRock initiated negotiations with Thermo Fisher in mid-2012.

7.    Desperate, in part, on account of financial and reputational factors incentivizing Thermo Fisher to remove the neglected business from its books, Thermo Fisher acted with haste to exploit the steadfast interest of RoundRock. What RoundRock did not know at the time was that Thermo Fisher had additional, more compelling reasons to cause it to divest itself from what can only be described as a business fraught with logistical and legal complications that threatened not only the profitability of the business but its viability at all—including that the Reynosa Facility was under siege and the subject of repeated, near-daily security breaches by members of the Gulf Cartel, an intimidating and violent criminal syndicate and drug trafficking organization residing in Mexico.

8.    At all times during the subsequent negotiations leading to the sale of its Lab Workstation Business, and unbeknownst to Plaintiffs, Thermo Fisher was intent on ensuring that Plaintiffs would not discover certain material information about the Reynosa Facility, which had been touted throughout the sale as the Lab Workstation Business' most productive and profitable facility.

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

9.   In order that it could quickly siphon off the troubled business, Thermo Fisher engaged in painstaking efforts to obfuscate, conceal and affirmatively misrepresent the true condition of the Lab Workstation Business.  From the first presentation and throughout the ensuing negotiations, Thermo Fisher structured the sales and diligence process in a manner that would eliminate the possibility of RoundRock discovering, among other things, the dangerous and concerning threats existent at the Reynosa Facility and the violent attacks that were transpiring in the region as Thermo Fisher simultaneously held itself out as providing RoundRock with critical information about the Facility.  Instead, throughout the sales and diligence process, Thermo Fisher:

- Provided materials which, although purporting to represent the true conditions of the facilities, including specifically, their respective strengths and highlighting certain features of the facilities' "geography," failed to disclose facts about the Cartel and further failed to signal the significant burdens, costs and potential liabilities stemming from the facilities' locale;

- Represented that it was "committed to the ongoing success" of the Lab Workstation Business' operations in Mexico notwithstanding that its actions predating the auction included turning a blind eye to the Cartel situation, maintaining inadequate security despite pleas from its operations managers calling for improvements, and having ignored proposals to provide fortification to the Reynosa Facility, which it ultimately failed to act on;

- Structured site visits in a manner designed to avoid RoundRock's discovery of the hostile encroachment and occupation by the Cartel of the Reynosa Facility and other issues relating to the facilities' operations;

- Intentionally ordered the employees of the Hamilton Entities to follow

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

a strict code of silence, making it impossible for RoundRock to ascertain knowledge of the working and operating conditions that existed and that only could have been known by Thermo Fisher and its employees in the Reynosa and other facilities;

- Concealed correspondence relating to the Cartel activity, including information and proposals detailing security deficiencies and enhancements necessary to fortify the Reynosa Facility.

10. Notably, notwithstanding the fact that its senior executives believed the situation to be grave enough to warrant the preparation and exploration of proposals for work to fortify the multi-million dollar Reynosa Facility and ***notwithstanding a breach of security in the midst of the negotiations***, Thermo Fisher deliberately withheld all information related to the Cartel activity, including situation reports and proposals for security upgrades to address the ongoing breaches.  In fact, none of Thermo Fisher's documents describing the Lab Workstation Business mentioned any of the multiple and serious problems that, now known, riddled the past operations and future business outlook of the Hamilton Entities.

11. Thermo Fisher executives at the highest levels who had been knowledgeable about the Cartel activity for years, took additional affirmative steps to suppress material information, including by repeatedly resisting, thwarting and dismissing attempts by RoundRock to become more knowledgeable about the business throughout the diligence process, manipulating and providing misleading and inconsistent information in response to diligence requests, concealing material flaws in the Lab Workstation Business, including issues that arose simultaneously during the negotiations, and the huge contingent liabilities facing the Hamilton Entities and rushing the diligence process all the while placing unreasonable restrictions and a fast timetable on the deal's closing.

11. In true form, Thermo Fisher also withheld material information regarding the Hamilton Entities' Epoxyn Products facility in Mountain Home,

Arkansas (the "Arkansas Facility").  Specifically, Thermo Fisher's senior executives directed employees in Arkansas to conceal certain significant facts concerning the operations of the Arkansas Facility.

12.     As a result of Thermo Fisher's bold-faced deceptive scheme, Plaintiffs have suffered considerable damages arising from their purchase of the Hamilton Entities.

## THE PARTIES

12. Plaintiff OpenGate Capital Group LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California.

13. Plaintiff RoundRock 092012 LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California.  RoundRock 092012 LLC is an indirect subsidiary of, and is controlled by, OpenGate Capital Group LLC.

14. Plaintiff RoundRock Scientific International LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California. RoundRock Scientific International LLC is a subsidiary of RoundRock 092012 LLC.

15. Plaintiff RoundRock Mexico LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California.  RoundRock Mexico LLC is a subsidiary of RoundRock 092012 LLC.

16. On information and belief, Defendant Thermo Fisher Scientific, Inc. is a Delaware corporation with its principal place of business in Boston, Massachusetts.

## JURISDICTION AND VENUE

17. The jurisdiction of this Court lies in, among other places, the provisions of 28 U.S.C. § 1331 because this action arises under the provisions of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j) and 17 C.F.R. § 240.10b-5.

18. This Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367 because the remaining state law claims are so related to the federal securities claims that they form a part of the same case or

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

controversy and fall within this Court's supplemental jurisdiction.

19. Venue is proper in this district pursuant to 15 U.S.C. §78aa and 28 U.S.C. §1391.

## FACTUAL ALLEGATIONS

### A. Thermo Fisher Sought To Off-Load The Hamilton Entities At All Costs.

20. As of June 2012, Thermo Fisher carried on its books a business called the Lab Workstation Business, which was conducted by the Hamilton Entities. The Lab Workstation Business had been run without adequate controls, incurred overruns and paid commissions to Thermo Fisher employees in "off balance" sheet transactions.

21. On June 28, 2012, Thermo Fisher announced in a Current Report on Form 8-K filed with the Securities and Exchange Commission ("SEC") that Thermo Fisher's senior management made a decision to pursue a sale of the Lab Workstation Business, part of Thermo Fisher's "Laboratory Products and Services Segment." The Form 8-K filed with the SEC stated that "the Company expects to complete such a transaction within twelve months. The Company will report the financial results of its laboratory workstations business as a discontinued operation beginning in the second quarter of 2012."

22. Thermo Fisher also disclosed in its Form 8-K that, on a business with revenues in 2011 of $180 million, Thermo Fisher planned to record an after-tax charge of approximately $50 million as the estimated loss on the planned divestiture.

23. Upon information and belief, either at or about the time it issued these public statements, Thermo Fisher retained Barclays to run a public auction to sell the Hamilton Entities and the Lab Workstation Business, with the auction conducted to sell the Hamilton Fisher entities as fast as possible, and, eventually, regardless of purchase price.

24. Among other things, Thermo Fisher and Barclays' failure to sell the Lab Workstation Business and the Hamilton Entities by the end of 2012 would have

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

required public disclosure by Thermo Fisher that it had failed to sell the $180 million Lab Workstation Business within 6 months, a fact that would have certainly raised concerns about undisclosed liabilities by public investors, and would have directly impacted Thermo Fisher's earnings per share, arguably the most important metric on Wall Street.

**B. RoundRock's Negotiations Leading To Purchase of the Hamilton Entities.**

25. Attracted by the appeal and potential of the Lab Workstation Business, on July 2, 2012, RoundRock expressed interest in potentially acquiring the Hamilton Entities.

26. After executing a Non-Disclosure Agreement required by Thermo Fisher in order to receive non-public documents about the Hamilton Entities, RoundRock made preliminary due diligence requests in the early part of July 2012.

27. Although Thermo Fisher provided some information during the parties' early discussions, the information flow stopped in late August 2012.

28. On information and belief, between late August and September 2012, Thermo Fisher had engaged another buyer who ultimately backed out.

29. Frantic, in mid-September 2012, Barclays contacted RoundRock to re-engage in negotiations and seek a swift closing of the sale.

30. Motivated to fully diligence the Hamilton Entities and the Lab Workstation Business, RoundRock mobilized team members to meet with management and to conduct diligence regarding the financial aspects of the business. Numerous meetings and telephone calls then took place over the course of the next several days.

31. During these early discussions, Thermo Fisher made clear that it desired to have a signed purchase agreement before satisfactory completion of due diligence.

32. As of late in the day on Friday, September 21, 2012, the RoundRock team was in Boston to negotiate a purchase contract with Thermo Fisher for the Hamilton Entities. The stated goal of the parties was to negotiate and execute a

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

purchase agreement by Sunday night.

33. In order accommodate Thermo Fisher's stated need for expedience in closing the deal, RoundRock proposed to structure the transaction such that the agreement, after negotiation, would be executed and the transaction would close after certain conditions, including satisfactory completion of due diligence (the "Closing Due Diligence Condition").

34. The Closing Due Diligence Condition, however, was a term rejected out of hand by Thermo Fisher's negotiating team, which included Shiraz Ladiwala, Executive Vice President of Business Development of Thermo Fisher.  In fact, Thermo Fisher communicated to Plaintiffs that it wanted the transaction to close simultaneously with the execution of the agreement.

35. From September 18, 2012, and afterward, RoundRock continuously requested financial and operational data to assess the Hamilton Entities.  These requests included the most fundamental items, such as receivables, outstanding letters of credit, a listing of performance bonds, inventory reports and working capital needs of the company.

36. In response to RoundRock's inquiries, reports and ever-changing information concerning Accounts Receivables, Aged Accounts, Inventory Levels, Historical Inventory Write-Downs, Employee Census Data, Payroll and Retention Payments, and Listing of Letters of Credit and Performance Bonds to be assumed or guaranteed by RoundRock, were provided.  Each request, however, was met with acrimony by Thermo Fisher and the information produced changed with each question by RoundRock intended to probe into the accuracy and basis for the reported information.

37. The parties spent the weekend of September 22 and 23, 2012, negotiating at the offices of Thermo Fisher's counsel, during which time numerous additional due diligence requests were made by RoundRock to understand the Lab Workstation Business and the Hamilton Entities, including to independently verify the sales

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1   documents and manager presentations made to the RoundRock team.

2   38. By early Saturday morning, September 22, 2012, it was clear that much

3   information that had specifically been requested, including in connection with the

4   Reynosa Facility in Mexico, had not been provided by Thermo Fisher. On that

5   morning, RoundRock provided Thermo Fisher with additional items that it expected

6   and desired to see.  Representatives of Barclays, on Thermo Fisher's behalf,

7   expressed dismay, discontent and incredulity that the additional items had been

8   requested and objected to providing additional information on the grounds that the

9   information was  either already made available to RoundRock or not relevant.

10   39. RoundRock's team continued to work through the weekend to

11   understand the true character of the Lab Workstation Business and the Hamilton

12   Entities.

13   40. By Sunday, September 23, 2012, communication between the parties

14   was tense.  As of that point, the parties were unable to come to agreement on material

15   terms of the Agreement, including the Closing Due Diligence Condition, the timing of

16   signing and closing, and an adjusted purchase price in light of Thermo Fisher's

17   conduct to date.

18   41. After a few days, Barclays brought the parties back together and

19   discussions resumed on Thursday, September 27, 2012.  RoundRock continued its

20   due diligence, with answers to its questions provided by Thermo Fisher in a manner

21   that RoundRock now understands was purposefully meant to mislead RoundRock.

22   RoundRock continued its review of additional documents made available by Thermo

23   Fisher and, based upon the diligence provided and further representations made by

24   Thermo Fisher regarding the operations of the Hamilton Entities, RoundRock agreed

25   to execute a purchase agreement on Friday, October 5, 2012, without a provision for

26   unwinding the deal in the event of any post-execution discoveries, and with a very

27   short window for further diligence between signing and closing of the transaction.

28   42. Reflective of the manner in which Thermo Fisher conducted itself during

the course of the transaction, at 11 p.m. on October 5, 2012, when the parties were in the midst of signing and exchanging the Equity Purchase and Sale Agreement By and Between Thermo Fisher Scientific Inc. and RoundRock 092012 LLC (the "Purchase Agreement"), Thermo Fisher dumped a series of material documents on RoundRock reflecting additional liabilities to be guaranteed by RoundRock, amounting to far more what RoundRock was previously informed by Thermo Fisher.

43. By that time, the Purchase Agreement was effective and RoundRock had no recourse to undo the deal.

44. On or about October 25, 2012, the parties ultimately closed the transaction for the purchase and sale of the Hamilton Entities (as defined hereinabove) in exchange for consideration, including $3,000,000 in cash, 10% of the fully diluted equity of Plaintiffs at the closing, and a promissory note for $10,000,000 (the "Sale").

### C. Plaintiffs Discover Security Threats to Reynosa Facility That Were Fraudulently Concealed By Thermo Fisher

45. RoundRock took possession of the premises of each of the Hamilton Entities' facilities in the United States and Mexico at midnight on October 22, 2012. Until that precise moment, Thermo Fisher had refused to allow RoundRock access to any of the facilities, including any contact permitted with its employees.

46. Following their purchase of the Hamilton Entities, Plaintiffs discovered, for the first time, ongoing, hostile security threats and daily encroachments by the Cartel at the Hamilton Entities' manufacturing facility in Reynosa, Mexico

47. Within hours of RoundRock assuming possession and ownership of the facilities, on the day RoundRock first appeared with its management team to conduct town hall meetings and transition the employees, an employee at the Reynosa Facility in Mexico apprised a representative of RoundRock of the Cartel activity. In addition to reporting on the Cartel's regular entry of the premises and even the main building itself, the employee expressed serious concerns about the safety of the Facility, and

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

1  asked that Plaintiffs take action to address the problem, which had not been done

2  under the previous owner, Thermo Fisher.

3      48. Plaintiffs immediately initiated an investigation to determine the nature

4  and extent of the Gulf Cartel activity at the Reynosa Facility.  This investigation is

5  ongoing.

6      49. During the course of their investigation, to date, Plaintiffs have

7  discovered that:

8      a.    The Reynosa Facility is, and has been continuously since at least

9  2011 (while Thermo Fisher still owned the Hamilton Entities), infiltrated by senior

10  local leaders of the "Gulf Cartel," a Mexican criminal organization active along the

11  border of Mexico and the United States, on a daily basis and at all hours of the day;

12      b.    On or about October 19, 2011, individuals commonly known or

13  believed to be involved with the Cartel brandished weapons to employees at the

14  Reynosa Facility in order to gain access to the parking lot;

15      c.    On that same day, those individuals gained access to the lot and

16  left a vehicle in the Facility parking lot for approximately nine hours;

17      d.    On October 24, 2011, the same individuals as those who entered

18  the parking lot on October 19, 2012, returned and left the same vehicle in the parking

19  lot of the Facility for more than 24 hours.

20      e.    Since the October 19 and October 24, 2011, incidents, members of

21  the Gulf Cartel have entered the grounds of the Reynosa Facility every day, regularly

22  leaving their cars – and, on occasion, tractor-trailers filled with unknown cargo – in

23  the Facility's parking lot overnight;

24      f.    In or around January and February 2012, the movement of

25  vehicles operated by Gulf Cartel members onto the premises of the Reynosa Facility

26  notably increased, prompting employees at the Facility to seek assistance from

27  Thermo Fisher;

28      g.    In or around January and February 2012, Thermo Fisher's security

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

1   advisors attempted to develop a strategy for security measures to be taken at the

2   Reynosa Facility in response to the cartel infiltration.  They proposed certain

3   upgrades to the guard booths, perimeter fencing and parking lot access ramps;

4           h.      None of the proposed measures or upgrades were meaningfully

5   or effectively implemented, despite repeated requests from employees at the Reynsrs

6   Facility;

7           i.      On or about September 23, 2012 – in the midst of negotiations

8   between Plaintiffs and Thermo Fisher, no less – armed militants entered the cafeteria

9   at the Reynosa Facility after being followed by rivals (either opposing cartel members

10   or soldiers).  They stayed for an hour or more before leaving;

11           j.      On or about October 3, 2012, during the course of negotiations

12   between Thermo Fisher and RoundRock, and due diligence by RoundRock, Art

13   Wood, the Vice President of Human Resources at Thermo Fisher, instructed the

14   Country Human Resources Director for Mexico, Roberto Enriquez, not to disclose

15   material information regarding security threats at the Reynosa Facility, to

16   RoundRock, including breaches of the premises and building by members of the Gulf

17   Cartel.  Specifically, in response to an email sent by Mr. Enriquez to Mr. Wood and

18   John Mitchell (Thermo Fisher's Director of Corporate Security), informing Messrs.

19   Wood and Mitchell of then-recent violent activity inside the Reynosa Facility, Mr.

20   Wood stated: "I believe we are through the diligence process with our buyers, so

21   don't know that now is the time to raise the issue."  In the same email, Mr. Wood also

22   acknowledged that security measures must be taken to address the threat of the Cartel;

23           k.      As of the time RoundRock took possession of the Reynosa

24   Facility, the presence of the Cartel was widespread and pervasive.  Members of the

25   cartel, known as "hawks," occupy a daily presence outside of the gate of the Facility.

26   The "hawks" monitor the Facility in this manner 24 hours a day, 7 days a week, even

27   taking comfort in the air-conditioned security booth when it is helpful;

28           l.      The Cartel's presence is widespread knowledge amongst the

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

Reynosa Facility's employees.

50. Upon information and belief, Thermo Fisher understood that the security threats, and breaches of the Reynosa Facility by members of a drug cartel, would influence the course of negotiations and would likely dissuade RoundRock from entering into the Purchase Agreement.

51. On information and belief, during a site visit to the Reynosa Facility prior to the closing, Thermo Fisher ensured that Plaintiffs' representatives could not tour or inspect the perimeter of the Facility and avoided any visits in the evening, when the Cartel activity generally takes place.

52. On at least one occasion in 2013, members of the Gulf Cartel again utilized the Reynosa Facility to take cover from a gun battle taking place outside of the Facility.

53. Upon information and belief, as a result of the Cartel activity, the managers of the Reynosa Facility leave the premises each day before sundown.

54. The infiltration and threats by Gulf Cartel members at the Reynosa Facility was fully known by corporate executives at Thermo Fisher as early as November 2011, approximately one year prior to the sale of the Hamilton Entities to Plaintiffs.

**D. Thermo Fisher Executives at the Highest Levels Were Aware Of the Drug Cartel Activity at the Reynosa Facility Nearly A Year Before The Sale**

55. During the course of their investigation, Plaintiffs have discovered that at least the following Thermo Fisher employees and executives were aware of the infiltration and drug cartel activity at the Reynosa Facility since at least as early as November 2011:

  a.   Thomas W. Loewald (Senior Vice President, President Laboratory Products Group);

  b.   Joseph S. Webb (Vice President, Manufacturing Operations, Sourcing and Logistics);

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1        c.      Bob Simpson (Vice President and General Manager, Laboratory

2              Workstations);

3        d.      Art Wood, (Vice President of Human Resources at Thermo Fisher)

4        e.      Fiona Walker (Vice President, Human Resources);

5        f.      Joseph A. Baiunco (Vice President, Human Resources);

6        g.      Roberto Enriquez (Country Human Resources Director for

7              Mexico);

8        h.      Jared Slagle (Director of Finance, Laboratory Equipment

9              Division);

10       i.      Amy L. Martin (Director, Human Resources); and

11       j.      John Mitchell (Director of Corporate Security).

12        56. On or about November 2, 2011, Thermo Fisher's Country Human

13 Resources Director for Mexico, Roberto Enriquez, sent a detailed email to Joseph

14 Baiunco and John Mitchell describing recent incidents wherein Gulf Cartel members

15 had breached the parking lot and security office at the Reynosa Facility.

16        57. On or about November 11, 2011, Joseph Webb provided a "Reynosa

17 security update" to Bob Simpson, Jared Slagle, Ricardo Salazar, Amy Martin, Fiona

18 Walker and Thomas Loewald, informing them that the situation involving the drug

19 cartel was being "worked" and that he would "advise further as information becomes

20 available."

21        58. Plaintiffs are informed and believe, and on that basis allege that, despite

22 its knowledge of the activity at the Reynosa Facility, beginning in November 2011,

23 Thermo Fisher made none of the upgrades that were recommended by its security

24 advisors in January and February 2012, and took no meaningful action to fortify or

25 further secure the Facility in response to the continuing cartel infiltration.  Instead,

26 Thermo Fisher began searching for a buyer on whom it could dump the Hamilton

27 Entities.

28 / / /

59. Moreover, at no point prior to the purchase and sale of the Hamilton Entities were Plaintiffs ever made aware of the drug cartel activity on the premises of the Reynosa Facility.

60. Rather, with full knowledge about the scope and magnitude of the drug cartel activity on the premises of the Reynosa Facility, Thermo Fisher intentionally concealed that information from Plaintiffs during the due diligence process for the Sale.

**E. Thermo Fisher Concealed Material Information With Respect To Other Aspects Of The Hamilton Entities**

61. Thermo Fisher concealed additional material facts with respect to the safety, viability and operation of the other facilities operated by the Hamilton Entities.

62. For example, Thermo Fisher's Vice President of Manufacturing Operations, Sourcing And Logistics, Joseph S. Webb, instructed employees at the Epoxyn Products facility in Mountain Home, Arkansas to withhold information regarding certain operations from Plaintiffs at a site visit to the Arkansas Facility prior to the Sale.

63. In the days and weeks prior to the closing, Thermo Fisher also expressly disallowed Plaintiffs from speaking at all with any employees working for the Hamilton Entities.

64. Further, Plaintiffs are informed and believe that Thermo Fisher may have concealed additional material facts regarding the Hamilton Entities in order to induce the Sale.

**F. In Addition To Concealing Material Information, Thermo Fisher Made Misleading, Affirmative Representations To Plaintiffs**

65. Many of the material terms in the Purchase Agreement include representations by Thermo Fisher concerning the existing conditions and operations at the various facilities, all of which render Thermo Fisher's conduct and the materials they provided additionally misleading. Specifically, in its "Confidential Information

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

Presentation" memorandum that was provided to Plaintiffs during the course of due diligence, Thermo Fisher went so far as to make representations to Plaintiffs regarding the positive characteristics of the "Geography" of Reynosa, Mexico, without any mention of or warning about the prevalence of violent, criminal activity in and around the Reynosa Facility itself. Instead, Thermo Fisher merely stated that the city of Reynosa is "highly industrialized" and has "easy shipping routes to other key cities." In that same memorandum, Thermo Fisher stated that it was "committed to the ongoing success" of the Lab Workstation Business in Mexico.

66. The Purchase Agreement, dated October 5, 2012, also contains numerous representations and warranties and other statements relating to the operations of the business.

(a) Paragraph 2.11 of the Agreement states, among other things that ". . . all of such properties and buildings . . . (ii) are suitable, sufficient and appropriate in all material respects for their current and contemplated uses";

(b) Paragraph 2.18 provides that "the Companies and Subsidiaries are in compliance with all Laws of any federal, state or foreign government"; and

(c) Paragraph 2.7(n) contains, in part, a representation that the Hamilton Entities had not "suffered a Business Material Adverse Effect", which is defined in paragraph 2.1(a) as, in relevant part, "any change, effect or circumstance that (i) is materially adverse to the business".

67. These representations and warranties were misleading, patently false and were designed to induce Plaintiffs' purchase of the Hamilton Entities despite serious concerns that should have been disclosed.

## FIRST CLAIM FOR RELIEF

### (Violation of Section 10(b) of the 1934 Securities Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) Against All Defendants)

68. Plaintiffs reallege and incorporate by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

69. Defendants engaged in a scheme to induce the sale of the Hamilton Entities to Plaintiffs by, among other things, omitting to disclose facts material to the value, security and safe operation of the Hamilton Entities and their facilities, and by making affirmative misrepresentations to the same effect.

70. Defendants knew and failed to disclose to Plaintiffs material facts, including but not limited to:

a. The Reynosa Facility is, and has been continuously since at least 2011, infiltrated by members of the Gulf Cartel, a Mexican criminal organization, on a daily basis;

b. On or about October 19, 2011, individuals known or believed to be associated with the Gulf Cartel brandished weapons to employees at the Reynosa Facility;

c. On or about October 19, 2011, individuals known or believed to be associated with the Gulf Cartel gained access to the parking lot of the Reynosa Facility and left a vehicle there for approximately nine hours;

d. On or about October 24, 2011, the same individuals gained entry into the parking lot again and left their vehicle for more than 24 hours;

e. Since the incidents on October 19 and 24, 2011, members of the Gulf Cartel have entered the grounds of the Reynosa Facility every day, regularly leaving their cars – and, on occasion, tractor-trailers filled with unknown cargo – in the Facility's parking lot overnight;

f. In or around January and February 2012, employees at the Reynosa Facility sought assistance from Thermo Fisher to address the Cartel activity;

g. In or around January and February 2012, Thermo Fisher was presented with proposals for certain security measures and upgrades to the guard booths, perimeter fencing and parking lot access ramps at the Reynosa Facility;

h. Thermo Fisher failed to meaningfully or effectively implement any of the proposed security measures or upgrades;

804829

i.     On or about September 23, 2012, armed militants entered the cafeteria at the Reynosa Facility and stayed for an hour or more;

j.     On or about October 3, 2012, Art Wood, the Vice President of Human Resources at Thermo Fisher, instructed the Country Human Resources Director for Mexico, Roberto Enriquez, not to disclose material information regarding security threats at the Reynosa Facility to RoundRock, stating: "I believe we are through the diligence process with our buyers, so don't know that now is the time to raise the issue" while acknowledging, at the same time, that security measures must be taken to address the threats; and

k.     Thermo Fisher senior executives directed employees at the Arkansas Facility to conceal certain material facts concerning the operations of the Facility from Plaintiffs during the diligence period.

71.     Defendants also made affirmative misrepresentations regarding the condition of the Hamilton Entities' facilities verbally and in writing in, at least, the Purchase Agreement, including but not limited to:

a.     All of the Hamilton Entities' properties and buildings "are suitable, sufficient and appropriate in all material respects for their current and contemplated uses";

b.     The Hamilton Entities "are in compliance with all Laws of any federal, state or foreign government"; and

c.     The Hamilton Entities had not "suffered a Business Material Adverse Effect".

72.     The course of conduct engaged in by Defendants, as described hereinabove, violated Section 10(b) (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) insofar as Defendants: (a) Employed devices, schemes and artifices to defraud Plaintiffs; (b) Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) Engaged in acts,

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

practices and a course of business that operated as a fraud or deceit upon Plaintiffs with respect to the purchase and sale of the Hamilton Entities.

73. Defendants acted with the intent to defraud Plaintiffs and to induce Plaintiffs to purchase the Hamilton Entities. Had Plaintiffs been aware of the foregoing facts, Plaintiffs would not have made the purchase.

74. As a direct and proximate result of the aforesaid actions, manipulative practices, misrepresentations, and omissions, Plaintiffs have suffered damages in an amount to be determined according to proof at trial, together with interest thereon.

75. WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### SECOND CLAIM FOR RELIEF

### (Fraudulent Misrepresentation Against All Defendants)

76. Plaintiffs reallege and incorporate by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

77. Defendants failed to disclose to Plaintiffs the material facts described above, including but not limited to:

a.     The Reynosa Facility is, and has been continuously since at least 2011, infiltrated by members of the Gulf Cartel, a Mexican criminal organization, on a daily basis;

b.     On or about October 19, 2011, individuals known or believed to be associated with the Gulf Cartel brandished weapons to employees at the Reynosa Facility;

c.     On or about October 19, 2011, individuals known or believed to be associated with the Gulf Cartel gained access to the parking lot of the Reynosa Facility and left a vehicle there for approximately nine hours;

d.     On or about October 24, 2011, the same individuals gained entry into the parking lot again and left their vehicle for more than 24 hours;

e.     Since the incidents on October 19 and 24, 2011, members of the Gulf Cartel have entered the grounds of the Reynosa Facility every day, regularly

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

1  leaving their cars – and, on occasion, tractor-trailers filled with unknown cargo – in

2  the Facility's parking lot overnight;

3        f.    In or around January and February 2012, employees at the

4  Reynosa Facility sought assistance from Thermo Fisher to address the Cartel activity;

5        g.    In or around January and February 2012, Thermo Fisher was

6  presented with proposals for certain security measures and upgrades to the guard

7  booths, perimeter fencing and parking lot access ramps at the Reynosa Facility;

8        h.    Thermo Fisher failed to meaningfully or effectively implement

9  any of the proposed security measures or upgrades;

10       i.    On or about September 23, 2012, armed militants entered the

11 cafeteria at the Reynosa Facility and stayed for an hour or more;

12       j.    On or about October 3, 2012, Art Wood, the Vice President of

13 Human Resources at Thermo Fisher, instructed the Country Human Resources

14 Director for Mexico, Roberto Enriquez, not to disclose material information regarding

15 security threats at the Reynosa Facility to RoundRock, stating: "I believe we are

16 through the diligence process with our buyers, so don't know that now is the time to

17 raise the issue" while acknowledging, at the same time, that security measures must

18 be taken to address the threats; and

19       k.    Thermo Fisher senior executives directed employees at the

20 Arkansas Facility to conceal certain material facts concerning the operations of the

21 Facility from Plaintiffs during the diligence period.

22       78. Defendants also made false and misleading representations to Plaintiffs

23 regarding the safety and security of the Hamilton Entities' facilities, and omitted to

24 state material facts necessary to make the statements they made not misleading, as set

25 forth hereinabove.

26       79. Defendants took affirmative actions in order to prevent Plaintiffs from

27 discovering the above facts, including, but not limited to, withholding critical

28 information during the due diligence process and preventing Plaintiffs from

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

adequately inspecting the Hamilton Entities' facilities and speaking to employees therein.

80. Defendants' failure to disclose the material facts described above to Plaintiffs was a material omission of fact.

81. Defendants intended to deceive Plaintiffs by failing to disclose the material facts hereinabove, and by making false and misleading representations to Plaintiffs regarding the safety, security and viability of the Hamilton Entities, in order to induce Plaintiffs to purchase the Hamilton Entities.

82. Plaintiffs were unaware of the falsity and intentionally misleading nature of the aforementioned representations, including, but not limited to the misrepresentations by omission of material facts, and justifiably relied upon the representations in purchasing the Hamilton Entities.

83. Plaintiffs would not have purchased the Hamilton Entities if Defendants had disclosed the material facts hereinabove.

84. As a direct and proximate result of the Defendants' false and intentionally misleading representations and concealment of material facts, as alleged herein, Plaintiffs have been damaged and are entitled to compensation in an amount to be determined according to proof at trial.

85. Furthermore, as a result of Defendants' fraudulent conduct, Plaintiffs are entitled to exemplary and punitive damages.

86. WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## THIRD CLAIM FOR RELIEF

### (Negligent Misrepresentation Against All Defendants)

87. Plaintiffs reallege and incorporate by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

88. As set forth hereinabove, Defendants made material misrepresentations, without reasonable grounds for believing them to be true, and omitted to state material facts necessary to make the statements they made not misleading.

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

1   89. Defendants intended that Plaintiffs rely on said representations,

2   misleading statements and omissions.

3   90. Plaintiffs were ignorant of the falsity of Defendants' representations and

4   believed them to be true.  Plaintiffs reasonably relied on the representations,

5   misleading statements and omissions.  In reasonable and justifiable reliance on said

6   representations and omissions, Plaintiffs purchased the Hamilton Entities.

7   91. As a direct and proximate result of the negligent misrepresentations and

8   omissions of Defendants, as herein alleged, Plaintiffs have been damaged in a sum to

9   be determined according to proof at trial.

10   92. WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

11   **FOURTH CLAIM FOR RELIEF**

12   **(Breach of Contract Against Defendant Thermo Fisher Scientific, Inc.)**

13   93. Plaintiffs reallege and incorporate by reference each and every allegation

14   contained in the above paragraphs as if fully set forth herein.

15   94. Plaintiff RoundRock 092012 LLC and Defendant Thermo Fisher

16   Scientific, Inc. entered into the Purchase Agreement, as alleged hereinabove, on or

17   about October 5, 2012, in connection with the purchase and sale of the Hamilton

18   Entities.

19   95. In the Purchase Agreement, Thermo Fisher made several representations

20   and warranties, including but not limited to: (a) in paragraph 2.11, that ". . . all of

21   such properties and buildings . . . (ii) are suitable, sufficient and appropriate in all

22   material respects for their current and contemplated uses"; (b) in paragraph 2.18, that

23   "The Companies and Subsidiaries are in compliance with all Laws of any federal,

24   state or foreign government"; and (c) in paragraph 2.7(n), that the Hamilton Entities

25   had not "suffered a Business Material Adverse Effect".

26   96. Thermo Fisher has breached the Purchase Agreement by making material

27   misrepresentations and material omissions in connection with representations and

28   warranties in the Purchase Agreement, as alleged herein.

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

97. Plaintiffs have fully performed their promises and obligations under the Purchase Agreement.

98. As a direct and proximate result of Thermo Fisher's breach of contract, Plaintiffs have incurred general and special damages to be determined according to proof at trial.

99. WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## FIFTH CLAIM FOR RELIEF

### (Violation of Section 9(a)(4) of the Securities Exchange Act of 1934 (15 U.S.C. 78i(a)(4)) Against All Defendants)

100.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

101.    Defendants, as sellers of the Securities associated with the Hamilton Entities, made misrepresentations and omissions of material facts in order to induce the purchase of said Securities by Plaintiffs, including but not limited to:

a.    The Reynosa Facility is, and has been continuously since at least 2011, infiltrated by members of the Gulf Cartel, a Mexican criminal organization, on a daily basis;

b.    On or about October 19, 2011, individuals known or believed to be associated with the Gulf Cartel brandished weapons to employees at the Reynosa Facility;

c.    On or about October 19, 2011, individuals known or believed to be associated with the Gulf Cartel gained access to the parking lot of the Reynosa Facility and left a vehicle there for approximately nine hours;

d.    On or about October 24, 2011, the same individuals gained entry into the parking lot again and left their vehicle for more than 24 hours;

e.    Since the incidents on October 19 and 24, 2011, members of the Gulf Cartel have entered the grounds of the Reynosa Facility every day, regularly leaving their cars – and, on occasion, tractor-trailers filled with unknown cargo – in

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

the Facility's parking lot overnight;

      f.    In or around January and February 2012, employees at the Reynosa Facility sought assistance from Thermo Fisher to address the Cartel activity;

      g.    In or around January and February 2012, Thermo Fisher was presented with proposals for certain security measures and upgrades to the guard booths, perimeter fencing and parking lot access ramps at the Reynosa Facility;

      h.    Thermo Fisher failed to meaningfully or effectively implement any of the proposed security measures or upgrades;

      i.    On or about September 23, 2012, armed militants entered the cafeteria at the Reynosa Facility and stayed for an hour or more;

      j.    On or about October 3, 2012, Art Wood, the Vice President of Human Resources at Thermo Fisher, instructed the Country Human Resources Director for Mexico, Roberto Enriquez, not to disclose material information regarding security threats at the Reynosa Facility to RoundRock, stating: "I believe we are through the diligence process with our buyers, so don't know that now is the time to raise the issue" while acknowledging, at the same time, that security measures must be taken to address the threats; and

      k.    Thermo Fisher senior executives directed employees at the Arkansas Facility to conceal certain material facts concerning the operations of the Facility from Plaintiffs during the diligence period.

    102.    Defendants knew or had reasonable grounds to believe that the misrepresentations and omissions were false and misleading.

    103.    Defendants' misrepresentations and omissions of material facts constitute a violation of Section 9(a)(4) of the Securities Exchange Act of 1934 (15 U.S.C. § 78i(a)(4)).

    104.    As a direct and proximate cause of Defendants' violation of Section 9(a)(4), and pursuant to Section 9(f) of the Securities Exchange Act of 1934, Plaintiffs are entitled to general and special damages in an amount to be determined

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

1   according to proof at trial, as well as reasonable costs and attorneys' fees.

2        105.    WHEREFORE, Plaintiffs pray for judgment as hereinafter set

3   forth.

4   ### SIXTH CLAIM FOR RELIEF

5   ### (Breach of the Implied Covenant of Good Faith and Fair Dealing Against

6   ### Defendant Thermo Fisher Scientific, Inc.)

7        106.    Plaintiffs reallege and incorporate by reference each and every

8   allegation contained in the above paragraphs as if fully set forth herein.

9        107.    Implied within every contract is a covenant of good faith and fair

10  dealing, which prevents one contracting party from engaging in conduct that unfairly

11  frustrates the other party's right to receive the benefits of the parties' agreement.

12       108.    Thermo Fisher unfairly frustrated Plaintiffs' right to receive the

13  benefits due under the parties' Purchase Agreement by making material

14  misrepresentations and omissions prior to the Sale.

15       109.    As a direct and proximate cause of Thermo Fisher's breach of the

16  implied covenant of good faith and fair dealing, Plaintiffs have incurred general and

17  special damages to be determined according to proof at trial.

18       110.    WHEREFORE, Plaintiffs pray for judgment as hereinafter set

19  forth.

20  ### PRAYER FOR RELIEF

21      WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against

22  Defendants, and each of them, as follows:

23      1.  For a judgment awarding general and special damages in favor of

24  Plaintiffs against Defendants, including all monies owed under the Agreement,

25  consequential damages, and interest thereon;

26      2.  For exemplary and punitive damages;

27

28

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

804829

3.  For costs and expenses incurred in connection with this action to the extent permitted by law, including but not limited to attorneys' fees pursuant to Section 9(f) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78i(f)); and

4.  For such other and further relief as the Court may deem just and proper.

DATED:  May 10, 2013

GLASER WEIL FINK JACOBS
HOWARD AVCHEN & SHAPIRO LLP

By: _____

Attorneys for Plaintiffs
OpenGate Capital Group LLC, RoundRock
092012 LLC, RoundRock Scientific
International LLC and RoundRock Mexico
LLC

804829

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Audrey B. Collins and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

## CV13- 3368 ABC (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[✗] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)      NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ Central ___ District of California _____

**ORIGINAL**

OpenGate Capital Group LLC, RoundRock
092012 LLC, RoundRock Scientific
International LLC and RoundRock Mexico
LLC
_____
*Plaintiff(s)*

v.

Thermo Fisher Scientific Inc.
_____

    SEE ATTACHED
_____
*Defendant(s)*

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.

**CV13-03368-ABC(AGRx)**

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*
Thermo Fisher Scientific Inc.
c/o Capitol Corporate Services, Inc.
455 Capitol Mall, Suite 217
Sacramento, CA 95814

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you
are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ.
P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of
the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney,
whose name and address are:
Fred Heather, Esq.
Amin Al-Sarraf, Esq.
GLASER WEIL FINK JACOBS HOWARD AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.
You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: May 10, 2013                                      _____
                                                        *Signature of Clerk or Deputy Clerk*

AO-440



1    FRED D. HEATHER - State Bar No. 110650
     fheather@glaserweil.com
2    AMIN AL-SARRAF - State Bar No. 265116
     aalsarraf@glaserweil.com
3    GLASER WEIL FINK JACOBS
       HOWARD AVCHEN & SHAPIRO LLP
4    10250 Constellation Boulevard, 19th Floor
     Los Angeles, California 90067
5    Telephone:  (310) 553-3000
     Facsimile:  (310) 556-2920
6

7    Attorneys for Plaintiffs
     OpenGate Capital Group LLC,
     RoundRock 092012 LLC,
8    RoundRock Scientific International LLC and
     RoundRock Mexico LLC

9

                 UNITED STATES DISTRICT COURT
10
              CENTRAL DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| 12  OPENGATE CAPITAL GROUP LLC, a Delaware limited liability company, ROUNDROCK 092012 LLC, a Delaware limited liability company, ROUNDROCK SCIENTIFIC INTERNATIONAL LLC, a Delaware limited liability company, ROUNDROCK MEXICO LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> THERMO FISHER SCIENTIFIC, INC., a Delaware corporation, and Does 1-50, <br><br> Defendants. | CASE NO.: <br><br> **COMPLAINT FOR:** <br> **(1) VIOLATION OF SECTION 10(b) AND RULE 10b-5 OF THE SECURITIES EXCHANGE ACT OF 1934;** <br> **(2) FRAUDULENT MISREPRESENTATION;** <br> **(3) NEGLIGENT MISREPRESENTATION;** <br> **(4) BREACH OF CONTRACT;** <br> **(5) VIOLATION OF SECTION 9(A)(4) OF THE SECURITIES EXCHANGE ACT OF 1934;** <br> **(6) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

COMPLAINT

804829

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:



## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

OpenGate Capital Group LLC, RoundRock 092012 LLC,
RoundRock Scientific International LLC and RoundRock
Mexico LLC

**DEFENDANTS**

Thermo Fisher Scientific Inc.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing
yourself, provide same.)

Fred Heather, Esq.
Amin Al-Sarraf, Esq.
Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP
10250 Constellation Boulevard, 19th Fl
Los Angeles, California 90067
310-553-3000

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Violation of Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 - Defendant made misrepresentations and omissions of material facts in order to induce the purchase of securities by Plaintiffs.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☒ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | IMMIGRATION | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | ☐ 465 Other Immigration Actions | | |

CV13-03368

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2
                                                                     CCD-JS44

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).   IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [ X ] No [   ] Yes

If yes, list case number(s):

**VIII(b).   RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [ X ] No [   ] Yes

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    [   ] A.  Arise from the same or closely related transactions, happenings, or events; or

[   ] B.  Call for determination of the same or substantially related or similar questions of law and fact; or

[   ] C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

[   ] D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX.   VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[   ] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[   ] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Delaware and Massachusetts |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____    Date May 10, 2013

Attorneys for Plaintiffs

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |