IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

OPENGATE CAPITAL GROUP LLC, *et al.*,

Plaintiffs,

v.

THERMO FISHER SCIENTIFIC INC.,

Defendant.

C.A. No. 13-1475-GMS

**SPECIAL MASTER OPINION**

With fact discovery having closed on August 3, 2015, there are certain discovery-related events which have been raised by the plaintiffs as deserving my attention. Specifically, Opengate Capital claims that, as a result of Thermo Fisher's litigation conduct, the plaintiffs have been deprived of critical information needed to properly prosecute their fraud-in-the-inducement case. They focus on three separate issues and seek not only additional information from defendants, but also sanctions with respect to the two Rule 30(6)(b) depositions they took.

The first issue revolves around what plaintiffs describe as Thermo Fisher's failure to respond fully to Requests for Production and Interrogatories. Plaintiffs are most concerned about what they characterize as a continuing lack of candor regarding records of both former and current Thermo Fisher employees who plaintiffs contend had pre-closing knowledge of drug cartel activities at, or in immediate proximity to, the defendants' Reynosa, Mexico facility. Plaintiffs cite the same individuals who were partly the subject of a previous Special Master

opinion.[1]

For this issue Opengate Capital refers me to the defendants' Rule 30(b)(6) deposition of on the subject of Thermo Fisher's record management policy. The designee for that deposition was Darla Phillips, whose title was and is Director of Records Management. Ms. Phillips testified, according to plaintiffs, in a way which belied defense counsel's representations about the intensity and breadth of defendants' search for records from the noted individuals. Plaintiffs, thus, infer the existence of, *e.g.*, "official records" generated by some or all of the named individuals still residing on/within Thermo Fisher's electronically-stored information system. Not only do plaintiffs seek the production of those "official records," but they also ask me to impose sanctions[2] as relief for defendants' non-production of such records.

Thermo Fisher's response is predicated upon a number of factors including, for the three former employees, the simple fact that Thermo Fisher's record management policy in place at the time these employees left the company automatically deleted all "transient records," such as emails, within ninety days of their last day of employment. In addition, Thermo Fisher searched multiple times in its ESI system for documents that might have remained. Moreover, at the time of sale closing in October 2012, the defendants left with the plaintiffs all records relating to the Lab Workstation business, including any that might qualify as "official records" generated by or held in a custodial manner by the three former employees.

The history of records retention relating to the other two named individuals, Ms. Martin

---

[1] June 11, 2015, pp.2-5. The employees were Amy Martin, Joseph Baiunco, Bob Simpson, John Listinsky and Javier Salazar Gonzalez, of whom Baiunco, Simpson and Listinsky left the employ of Thermo Fisher well before the defendants' litigation hold went into effect, indeed, many months before the sale of the Lab Workstation business.

[2] Plaintiffs seek attorneys' fees and costs associated with the filing of their motion to compel.

and Mr. Salazar, is captured on pp. 3-5 in the June 11, 2015 Special Master opinion, reference to which is made and specifically incorporated herein so that it does not need to be reiterated now.

Despite plaintiffs' confidence that something is amiss and, at bottom, their belief that defendants are responsible for a deliberate obfuscation concerning pre-closing documents, I am not persuaded that plaintiffs have established anything more than coincidences and cold reality, or that there is something more I can or should do in terms of compelling the production of documents or information beyond what I have previously done in past Special Master Opinions and Orders. I note that plaintiffs have taken the depositions of at least two of the individuals, Ms. Martin and Mr. Baiunco, whose records are at issue, but have produced little from either deposition which tends to confirm plaintiffs' suspicions regarding unproduced records. Consequently, plaintiffs' motion to compel further Interrogatory Answers and/or Responses to Request for Production is denied[3]. IT IS SO ORDERED.[4]

The next issue pertains to the efficacy of the records management-related Rule 30(b)(6) deposition of Thermo Fisher by its designee, Darla Phillips. Plaintiffs contend that Ms. Phillips was inadequately prepared for that deposition and, as a result, monetary sanctions should be imposed. That assertion must be measured against the Rule's language: "The persons designated must testify about information known or reasonably available to the organization." FRCP 30(b)(6). Opengate Capital, though, only cites a few instances during the deposition when the

---

[3] See, however, the next section of this Opinion which deals with the possibility of additional document production and/or the equivalent of answers to written questions.

[4] Since I am unable to address or resolve spoliation allegations, I recognize that this denial may not necessarily preclude a consideration by the Court as to whether the document-related facts that plaintiffs have established may still be actionable in a spoliation sense.

witness could not testify on a very narrow topic. More significantly, having read her deposition, I am quite satisfied that she was a well-prepared deponent for Rule 30(b)(6) purposes. The applicable standard requires that the entity whose knowledge is at issue must ensure that the witness' preparation includes matters beyond the designee's personal knowledge. *Crawford v. George & Lynch, Inc.*, 19 F.Supp. 3d 546, 554 (D. Del. 2013)["The duty of preparation goes beyond the designee's personal knowledge and matters in which the designee was personally involved...If necessary, the deponent must use documents, past employees, or other resources to obtain responsive information."]; *Wilson v. Lakner*, 228 F.R.D. 524, 528-529 (D. Md. 2005)[Rule 30(b)(6) does not require absolute perfection, but does require "a good faith effort on the [part] of the designate to find out the relevant facts—to collect information, review documents, and interview employees with personal knowledge" no different than when answering interrogatories]. Given the extensiveness of Ms. Phillips' testimony and her ability to field plaintiffs' counsel's inquiry on the pre-deposition identified topics, my remedy for the few gaps in her knowledge is to rely on the same protocol, now offered by defendants, that I required plaintiffs to follow when the preparation of their own Rule 30(b)(6) witnesses was challenged by the defendants, but where I found essential adequacy[5]: (i) by September 15, 2015, plaintiffs shall list in writing those specific questions which they believe received inadequate answers from Ms. Phillips; and (ii) defendants shall, no later than September 29, 2015, provide sworn written responses to the listed items.[6] IT IS SO ORDERED.

---

[5] See Special Master Opinion dated July 15, 2015, p. 5.

[6] It is certainly possible that the further search for information as contemplated here could result in additional documents being produced and, effectively, additional answers to Interrogatories.

Finally, plaintiffs take particular umbrage at what they characterize as a thoroughly unprepared Thermo Fisher Rule 30(b)(6) witness on a number of specific topics which had been identified prior to the deposition. On the other hand, about half of the topics covered issues for which a member of Thermo Fisher's "core deal team," Scott Mazur, the designated deponent, had personal knowledge. Plaintiffs seem to be content with respect to those of the topics that did generate answers. I have no basis to doubt that conclusion.

However, other topics were directed at the defendants' knowledge of pre-closing activity and information which plaintiffs contend was never disclosed to them leading up to their acquisition of the Reynosa plant. For example, Topic 1 was "The Second Amended Complaint in this Action." Topic 3 included the decision to sell the Reynosa facility and Topic 4 dealt with, *e.g.*, decisions about what to tell potential buyers. Topic 7 included "Thermo Fisher's knowledge of criminal activity in Mexico, including, but not limited to, Gulf Cartel activity." Topic 8 dealt with defendants' response to "criminal activity in Reynosa, Mexico" and Topic 9 pertained to communications and documents "related to suspected Gulf Cartel activity in Reynosa, Mexico." With respect to these six topics, Thermo Fisher chose to designate only one individual, an attorney whose responsibilities generally focused on the transactional features of asset sales and acquisitions. Mazur was not part of the defendants' management who interacted with plaintiffs' management representatives, either in site inspections or otherwise, prior to closing. He was not an HR operative or knowledgeable about security matters as part of his job responsibilities. As such, he had very limited knowledge relating to those Rule 30(b)(6) topics noted above which were obviously intended to draw out, if possible, admissions against interest regarding pre-closing knowledge of drug cartel activity in and around the Reynosa facility. In

fact, for example, Mazur frequently deferred security-related questions to the individual at Thermo Fisher he considered most knowledgeable about security, John Mitchell, the company's Global Security head.

The defendants believe that, in a disclosure case, it is the core deal team's knowledge which matters and thus is at issue. But, that perception is at least incomplete and possibly disingenuous. Persons other than the core deal team interacted with plaintiffs' representatives and were equally capable of both possessing relevant knowledge and making critical disclosures. By resisting and not acknowledging that fact, defendants have boxed themselves into a corner. The assertion that only the core deal team members could be candidates for Rule 30(b)(6) depositions[7] breaks down under scrutiny; it is a weak premise that exposes Thermo Fisher to not only criticism but sanction.

The defendants also believe that, in addition to knowing what the core deal team knew on the subject, Mazur's review of Mitchell's deposition transcript (rather than interviewing Mitchell), was sufficient to adequately prepare Mazur as a Rule 30(b)(6) witness on security-related questions. Similarly, defendants contend that they were not required to arrange for Mazur to personally meet with the various Thermo Fisher management representatives, executives or Board members to ascertain their knowledge of drug cartel activity impacting the Reynosa facility. Defendants, though, cannot adequately defend Mazur's failure to send emails or make other inquiries to, *e.g.*, the various management personnel, including any who interacted with plaintiffs' representatives during the latter's due diligence activities. Those inquiries could

---

[7] In fact, defense counsel postulated that, without the core deal team having applicable knowledge, there was virtually no one other than Mazur to designate.

have asked whether any of Thermo Fisher's executives and management had knowledge responsive to Topics 1, 3, 4, 7, 8 and 9. As significantly, what prevented the defendants from designating one or more other Rule 30(b)(6) witnesses whose knowledge was greater than Mazur's regarding those six topics?[8]

Rule 30(b)(6) requires an inquiry to find "reasonably available" information known to the corporate entity for whom the witness is testifying. *Crawford*, 19 F. Supp. 3d, *supra* at 554 [whether with respect to interrogatories, document production or Rule 30(b)(6) deposition, responding party obligated to produce information under its control](citing *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 2002 WL 1835439, *4 (S.D N.Y. 2002){in turn citing *U.S. v. Procter & Gamble Co.*, 356 U.S. 677 (1958)}); *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 216 (E. D. Pa. (2008)[corporation must prepare designee "to be able to give binding answers on its behalf" and perform "a reasonable inquiry for information"]; *Wilson*, 228 F.R.D., *supra* at 528-529. How do Mazur's efforts hold up in light of these objective standards? Not well for the six topics at issue, because he rarely explored beyond the core deal team to determine what information was reasonably available.

Under the circumstances, I find that, with respect to the six noted topics, defendants have acted contrary to the duties required when preparing a witness for a Rule 30(b)(6) deposition. I find that, by this conduct, Thermo Fisher impeded and frustrated a fair examination of their Rule 30(b)(6) witness. As such, the provisions of Rule 30(d)(2) come into play. Accordingly, defendants shall reimburse to plaintiffs (i) one-half (1/2) of the reasonable expenses, including

---

[8] Defendants' claim, that the time crunch associated with the end of fact discovery precluded the use of other designees, is consistent with their weak working premise, *i.e.*, that only their core deal team members were Rule 30(b)(6) deposition candidates.

those relating to travel to and from Boston, and applicable court reporter and videographer fees incurred in connection with the Mazur deposition; (ii) one-half (1/2) of the attorneys' fees incurred by the plaintiffs in taking that deposition; and (iii) all attorneys' fees associated with presenting and arguing this feature of their application. Plaintiffs shall provide me with an accounting of those expenses no later than September 30, 2015. IT IS SO ORDERED.

Citing Rule 30(b)(6), Opengate Capital goes further to request that I also impose a more profound sanction as a result of their being partially but effectively stonewalled. Specifically, plaintiffs seek an order by which Thermo Fisher is not only bound by Mazur's testimony but, as well, "precluded from calling any additional witnesses to add to" that testimony or to supplement the testimony of "those Thermo Fisher witnesses who have testified about the matters within the scope of Opengate's 30(b)(6) Notice." Moreover, plaintiffs do not want me to permit Thermo Fisher to simply answer any heretofore unanswered questions from the Rule 30(b)(6) deposition. From plaintiffs' point of view, that after the fact, do-over opportunity will encourage a corporate entity to disregard its obligations to present one or more adequately prepared witnesses for the deposition itself. Nevertheless, as I will describe below, there is a different type of do-over.

Whether or not I was inclined, based on this record, to also impose trial evidentiary consequences, Rule 30(d)(2)'s language ("an appropriate sanction—including...") does not contemplate such[9]. *See, e.g., GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 185 (E.D. Pa. 2008)['The text of Rule 30(d)(2) does not define "appropriate sanction"']; *Constellation NewEnergy, Inc. v. Powerweb, Inc.*, 2004 WL 1784373, *5 (E.D. Pa. 2004)[producing a totally

---

[9] Whereas, *e.g.*, Rule 37(b)(2)(A)(ii) contemplates possible evidentiary relief in response to a failure to obey a court order.

8

unprepared Rule 30(b)(6) witness is tantamount to a complete failure to produce a witness, thus allowing Rule 37 sanctions]. None of the Rule 30(d)(2) cases I've seen indulged in a Rule 37 type sanction unless, *e.g.*, there was a total failure to comply with the Rule 30(b)(6) standard. Moreover, a sanction excluding evidence may cause fundamental unfairness at trial. *Newman v. GHS Osteopathic*, 60 F.3d 153, 156 (3d Cir. 1995). For these reasons, plaintiffs' application for evidentiary relief is denied. IT IS SO ORDERED.

It is an appropriate sanction under Rule 30(d)(2), however, for defendants to produce Mazur and/or one or more other individuals designated for that purpose. Defendants shall make such witness designation(s) no later than September 22, 2015, and shall produce the witness(es) in Los Angeles, California, or at another reasonable location of plaintiffs' choosing, to sit for a single-day Rule 30(b)(6) deposition(s). The deposition(s) shall be conducted entirely at defendants' expense; *i.e.*, defendants shall pay all associated reasonable expenses including plaintiffs' attorneys' fees (which shall include preparation as well as deposition time), court reporter and videographer fees. The supplemental Rule 30(b)(6) deposition of Thermo Fisher on the six topics noted above shall occur no later than October 2, 2015. IT IS SO ORDERED.

_____
Special Master

Dated: September 8, 2015